IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTINE LYNN VANBLARICUM,                    6:13-CV-00106-BR

        Plaintiff,                         OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,[1]

        Defendant.


KATHRYN TASSINARI
MARK A. MANNING
Harder, Wells, Baron & Manning, P.C.
474 Willamette
Suite 200
Eugene, OR 97401
(541) 686-1969

        Attorneys for Plaintiff

---

    [1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this case. No further action need be taken to continue this case by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405.

1 - OPINION AND ORDER

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**KATHRYN A. MILLER**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2240

   Attorneys for Defendant


**BROWN, Judge.**

  Plaintiff Christine Vanblaricum seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has juris-diction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

  For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


      <u>**ADMINISTRATIVE HISTORY**</u>

  Plaintiff filed her applications for SSI and DIB on December 5, 2008, alleging a disability onset date of March 1,

2 - OPINION AND ORDER

2006.[2]  Tr. 160, 162.[3]  The applications were denied initially
and on reconsideration.  An Administrative Law Judge (ALJ) held a
hearing on February 8, 2011, at which Plaintiff amended her
disability onset date to January 1, 2007.  Tr. 47-91.  Plaintiff
was represented by an attorney at the hearing.  Plaintiff and a
vocational expert (VE) testified at the hearing.

     The ALJ issued a decision on May 13, 2011, in which he found
Plaintiff is not disabled and, therefore, is not entitled to
benefits.  Tr. 18-33.  That decision became the final decision of
the Commissioner on August 31, 2012, when the Appeals Council
denied Plaintiff's request for review.  Tr. 1-4.


## BACKGROUND

     Plaintiff was born on June 5, 1969.  Tr. 160, 162.
Plaintiff was 41 years old at the time of the hearing.  Plaintiff
has a GED.  Tr. 57.  Plaintiff has past relevant work experience
as a service-station attendant, a social-service aide, and a
caregiver.  Tr. 82-83.

     Plaintiff alleges deteriorating discs, arthritis in her

---

     [2]  In his decision the ALJ incorrectly reported April 3,
2006, as the disability onset date identified by Plaintiff in her
applications, perhaps because Plaintiff alleged this date in a
Disability Report.  Tr. 18, 180.  In any event, Plaintiff amended
her disability onset date to January 1, 2007, at her hearing
before the ALJ.

     [3]  Citations to the official transcript of record filed by
the Commissioner on July 1, 2013, are referred to as "Tr."

back, painful wrists, and depression.  Tr. 180.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 21, 25-30.


## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The ALJ must develop the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is

4 - OPINION AND ORDER

"relevant evidence that a reasonable mind might accept as
adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11
(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690
(9th Cir. 2009)).  It is more than a mere scintilla [of evidence]
but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d
at 690).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).


## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner
determines the claimant is engaged in substantial gainful

activity.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an

6 - OPINION AND ORDER

equivalent schedule." SSR 96-8p, at *1.  In other words, the
Social Security Act does not require complete incapacity to be
disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228,
1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603
(9th Cir. 1989)).

   At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work she has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv),
416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

   If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the
burden shifts to the Commissioner to show a significant number of
jobs exist in the national economy that the claimant can perform.
*Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th
Cir. 2010).  The Commissioner may satisfy this burden through the
testimony of a VE or by reference to the Medical-Vocational
Guidelines set forth in the regulations at 20 C.F.R. part 404,
subpart P, appendix 2.  If the Commissioner meets this burden,
the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1),
416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her January 1, 2007, alleged onset date.  Tr. 20.

At Step Two the ALJ found Plaintiff has the severe impairments of "degenerative disc disease of the lumbar spine status post two surgeries; obesity; major depressive disorder; anxiety disorder; and a history of methamphetamine and alcohol abuse with current use of alcohol and marijuana."  Tr. 20.  The ALJ determined Plaintiff's hepatitis C and degenerative changes in the cervical spine and left shoulder are not severe impairments.  Tr. 21.

At Step Three the ALJ determined Plaintiff's impairments do not meet or equal the criteria for any impairment in the Listing of Impairments.  Tr. 21-23.  The ALJ concluded Plaintiff can perform light work.  Tr. 23.  Specifically, the ALJ found Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk for six hours in an eight-hour work day; frequently balance, kneel, crawl, and climb ramps and stairs; and occasionally stoop, crouch, and climb ladders, ropes, and scaffolds.  The ALJ also found Plaintiff can perform unskilled work consisting of routine, repetitive tasks with simple instructions and detailed tasks that are familiar to her.  She also can tolerate occasional, brief contact with the general

8 - OPINION AND ORDER

public and will function best in a routine and structured work setting.  Tr. 23.

At Step Four the ALJ concluded Plaintiff cannot perform her past relevant work as a service-station attendant, caregiver, or social-services aid.  Tr. 31.

At Step Five the ALJ found Plaintiff could perform other jobs that exist in significant numbers in the national economy; specifically stuffer, marking clerk, and bonder.  Tr. 32.

Accordingly, the ALJ found Plaintiff is not disabled and, therefore, is not entitled to benefits.[4]


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) improperly rejected the opinion of a treating physician, (2) incorrectly discredited Plaintiff's testimony, (3) improperly rejected the opinions of two "other sources," and (4) did not include all of Plaintiff's limitations in the RFC.

---

[4]  "[A]n ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction.  If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits[.]"  *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).  Because the ALJ found Plaintiff is not disabled after conducting the five-step inquiry without distinguishing the separate impact of Plaintiff's past and current use of drugs and alcohol, the ALJ was not required to assess whether Plaintiff would be disabled if she stopped using drugs or alcohol.  *See id.*

I.   **The ALJ gave specific and legitimate reasons for rejecting the opinion of Plaintiff's treating physician.**

Plaintiff contends the ALJ erred when he did not give any weight to the opinion of treating neurosurgeon Anthony Hadden, M.D.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).

Dr. Hadden began treating Plaintiff on August 10, 2009. Tr. 685.  At that time Plaintiff complained about a constant ache across her midline with a pulling/tight radiation through her hips and groin.  She reported numbness or tingling down her right leg, which allegedly had been chronic since a previous surgery in 1994.  Plaintiff stated over the past several months the numbness or tingling had moved into her right foot, and she dragged her right foot when fatigued.  Tr. 685.  An MRI showed spondylosis with L4-S1 degenerative disc disease with right L5-S1 lateral

10 - OPINION AND ORDER

recess stenosis impinging her transiting right S1 nerve root.
Tr. 688.  Dr. Hadden assessed lumbar radiculopathy, prescribed
Norco and Robaxin, and discussed injections.  Tr. 689.  Plaintiff
reported during an office visit on September 28, 2009, that she
had experienced no improvement after an injection.  Tr. 695.  On
December 14, 2009, she reported a week of relief after another
injection, but her sciatic pain had returned.  Tr. 702.

Dr. Hadden performed a right L5-S1 microdecompression with
laminotomy, facetectomy, and decompression in February 2010.
Tr. 473.  Plaintiff "improved significantly" just after the
surgery.  Tr. 708.  When she walked to and from the store in mid-
February 2010, however, she exacerbated her low-back condition.
Dr. Hadden prescribed Medrol, continued the Percocet, and
directed her to walk throughout the day.  Tr. 711.  Dr. Hadden's
note inexplicably indicates Plaintiff had "regressed" in March
2010, even though Plaintiff reported "doing well" with improving
back and leg pain.  Tr. 714-15.  In May 2010 Plaintiff's leg
pain had improved, but she had increasing left low-back pain.
Tr. 720.  Dr. Hadden's May, June, and July treatment notes are
essentially identical and do not reflect any changes in
Plaintiff's condition or complaints.  Tr. 720 (5/12/2010), 722
(6/7/2010), 724 (6/28/2010), 726 (7/12/2010).

David Kane, M.D., of Dr. Hadden's office examined Plaintiff
on August 18, 2010, and reported "[o]verall, her legs feel pretty

good with only residual numbness.  Her worst pain is in the R
side of her lower back which includes partially down into her
buttock."  Tr. 728.  His examination revealed a normal gait,
normal bilateral strength, sensation and reflexes, no spasm in
her lower back, negative straight-leg raise, but limited lumbar
extension due to increased pain.  He recommended regular
exercise, tapering off of pain medications, and a bilateral SI
joint injection.  Tr. 730.

Dr. Hadden saw Plaintiff on October 11; November 1;
November 29; and December 27, 2010, and again he repeated
Plaintiff's initial complaints and his own initial examination
findings in each of his treatment notes.  Tr. 604, 608, 764.  In
every treatment note after the surgery, Dr. Hadden identified
right low-back and leg pain as Plaintiff's symptoms.  Tr. 573-
608, 705-32, 764-68.  In many of his notes he also reported:
"[Plaintiff's] leg pain is improving but she is having increasing
left > right low back pain."  Tr. 595-602, 732, 761, 764, 766,
768.

Dr. Hadden completed a Medical Source Statement on
January 20, 2011, in which he diagnosed Plaintiff with lumbar
radiculopathy, muscle weakness, low-back pain, and facet
arthrosis.  Dr. Hadden opined Plaintiff's prognosis is "good."
Tr. 770.  He reported Plaintiff's symptoms as *left* radicular leg
pain, *left* low-back pain, and numbness and tingling in the *left*

12 - OPINION AND ORDER

calf and foot precipitated by movement.  The objective signs of
her impairment included abnormal gait, sensory loss, and muscle
weakness.  He estimated Plaintiff could walk half a block without
rest or pain, could sit for 20 minutes, and could stand for one
hour.  He thought Plaintiff could stand or walk for two hours in
a working day and sit for four hours.  Dr. Hadden believed
Plaintiff would need to take two fifteen-minute unscheduled
breaks.  He opined Plaintiff could carry 20 pounds frequently and
50 pounds occasionally, would be off-task approximately ten
percent of the day, and would be absent one day per month.
Tr. 770-73.

Dr. Hadden's opinion conflicts with the opinions of
consultative examining physician, Michael Henderson, M.D., and
nonexamining physician, Leslie Arnold, M.D.  Tr. 26-28.  Thus,
the ALJ was required to provide specific and legitimate reasons
for accepting their opinions over Dr. Hadden's opinion.

The ALJ noted Dr. Hadden's treatment notes changed little
from visit to visit, which suggested he merely copied them from
month to month.  In addition, Dr. Hadden's Medical Source
Statement reflected Plaintiff's symptoms were on her left side.
Tr. 770.  Plaintiff concedes Dr. Hadden's treatment notes do not
reflect left leg pain, but she argues that fact is not a basis
for the ALJ to reject Dr. Hadden's opinion.  Pl.'s Reply at 2.
Since Dr. Hadden's treatment notes are internally inconsistent

and unclear about the location of Plaintiff's pain, however, the ALJ had a proper basis for concluding that Dr. Hadden "quite clearly confused the most basic of the allegations, that concerning which limb was affected by symptomatology." Tr. 27. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)(a discrepancy between a treating physician's notes and his opinions is a clear and convincing reason for giving little weight to the physician's opinion).

Instead the ALJ gave great weight to the opinion of Dr. Henderson, an examining physician.  On February 22, 2011, Dr. Henderson observed Plaintiff was able to put on her socks and to lace up her boots without difficulty by placing her heel on the chair with her hip and knee completely flexed.  Tr. 794.  He also observed her walking with a normal gait and also walking heel to toe, on her heels, and tandem walk.  She had a decreased forward range of motion.  She could squat halfway down and back up and had normal muscle strength with some decreased ankle strength and decreased sensation in the calf and right foot.  Dr. Henderson found Plaintiff displayed pain behaviors, and he noted significant discrepancies in Plaintiff's straight-leg raising and hip and knee flexion as well as jerking motions during strength testing.  Tr. 795.  Dr. Henderson found Plaintiff's reported weight limit of only two or three pounds to be "excessively light" and noted Plaintiff described diffuse pain rather than

radicular pain.  Tr. 795.  Plaintiff's possible opioid abuse was only one of many reasons that Dr. Henderson concluded Plaintiff's back pain was not as severe as she stated.  Dr. Henderson did not limit her sitting and concluded she could stand for two hours at a time for eight hours and could walk one hour at a time for six hours.  Tr. 796.

Although Dr. Henderson is not a specialist, his analysis is extensive, comprehensive, and detailed.  *See Magallanes*, 881 F.2d at 753 (conflicting opinion resting on independent, objective findings could constitute substantial evidence).  In addition, while some of his findings were similar to those of Dr. Hadden, Dr. Henderson undertook his own examination, which resulted in notably different observations such as Plaintiff's normal gait and normal lower-extremity strength.  *Compare* Tr. 768 *with* Tr. 795.  In addition, Dr. Hadden's opinion was not supported by a functional assessment, and he could not explain his findings as to Plaintiff's functional limitations when he was asked to respond to Dr. Henderson's assessment of Plaintiff's limitations.  Tr. 28, 805.

Finally, the ALJ found Dr. Hadden's function report internally inconsistent in that Dr. Hadden found Plaintiff could lift and carry up to 50 pounds while at the same time could only stand, walk, and sit for a total of six hours a day.  As the ALJ observed, "[i]f she is able to lift and carry into the medium

range, it would not be unreasonable to believe she could perform lighter work on a full time schedule." Tr. 27. Although this may be a rational interpretation, it is not supported by any evidence in the record, and, therefore, the Court does not consider this reason in its analysis. The Court, however, finds the ALJ provided specific and legitimate reasons for giving Dr. Hadden's opinion less weight, including his "copied" treatment notes; his opinion reporting Plaintiff's left-sided pain, which was inconsistent with his treatment notes; and his inability to respond to Dr. Henderson's functional assessment.

Accordingly, the Court concludes on this record that the ALJ did not err when he rejected Dr. Hadden's opinion about Plaintiff's functional limitations because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## II. The ALJ gave clear and convincing reasons for partially rejecting Plaintiff's testimony.

Plaintiff alleges the ALJ erred when he failed to give clear and convincing reasons for partially rejecting Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony: The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to

16 - OPINION AND ORDER

produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id*. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause [Plaintiff's] alleged symptoms," but he concluded Plaintiff's testimony "concerning the intensity, persistence, and limiting effects" of her symptoms "are not credible to the extent they are inconsistent with the above [RFC] assessment." Tr. 25. The ALJ pointed out Plaintiff's inconsistent testimony; for example, Plaintiff testified she primarily dragged her left foot on the stairs when she previously told Dr. Hadden that she dragged her right foot. Tr. 68, 685. She also initially testified she could not carry anything, and then later she admitted to carrying

quartered firewood for her wood stove.  Tr. 65, 79.  When the ALJ
pointed out during the hearing that Plaintiff had neglected to
seek counseling at Deschutes County Mental Health after
specifically being referred there, Plaintiff complained about
being nonfunctional during those times even though Nurse
Practitioner (N.P.) Debbie Rief noted around the same time that
Plaintiff's depression was stable and that medication had been
helpful.  Tr. 61, 674.  In addition, Plaintiff's testimony that
she did not participate in her husband's painting business after
she stopped working in 2006 also "contrast[ed] sharply" with
statements she made to her treating and examining medical sources
that she had been involved in the business until July 2008.
Tr. 25, 316, 384, 387, 395.

The ALJ also noted Plaintiff had not sought treatment for
her back pain until April 2009 even though Plaintiff complained
about back pain twice in 2007.  On April 5, 2007, Plaintiff
sought relief for her hacking cough, which caused her to
experience mid-side and mid-back pain.  Tr. 316.  Although
Plaintiff initiated a pain-management consultation for her back
pain on May 10, 2007, she neglected to return repeated telephone
calls from Mayra E. Dennis, N.P., offering a left L3-4 facet
injection.  Tr. 449, 454.  Notably at that May 10 visit,
Plaintiff also sought treatment for a heel injury that occurred
when she was painting her ceiling.

The ALJ acknowledged Plaintiff "had a period of more restriction surrounding the [February 2010] back surgery" lasting less than 12 months, but the ALJ concluded "the evidence fails to show consistent findings of objective deficits not accommodated by the [RFC]." Tr. 25. Specifically, the ALJ pointed out that when Plaintiff was first treated in April 2009 for her back pain, she displayed normal muscle strength with the exception of 4/5 for the right quadriceps. She had pain in the right lumbosacral area with right-to-left straight-leg raises about 40 degrees, but she had full range of motion with flexion. Tr. 429. Raymond Tien, M.D., a treating physician, recorded similar findings, but he also observed Plaintiff heel-and-toe walk with negative straight-leg raises on both the right and left and detected an antalgic (abnormal) gait. Tr. 408. As the ALJ commented, Dr. Hadden's subsequent notes of Plaintiff's repeated diminished sensation in her right leg and foot, antalgic gait, and muscle weakness were not helpful because it appeared he merely copied his treatment notes from previous examinations. Thus, Dr. Hadden's chart notes do not establish the persistent nature of Plaintiff's symptoms. When Plaintiff established care in July 2009 with Ashton Wickramasinghe, M.D., Plaintiff complained about loss of sensation in her right foot, but she displayed a normal gait, negative straight-leg raise, full strength, and full range of motion. Tr. 626. In August 2009 Plaintiff reported she had a

"good response" to Norco and a muscle relaxer.  Tr. 629.  In December 2009 Plaintiff told Dr. Wickramasinghe that she also had a good response to an injection she was given in October. Tr. 643.  After the surgery in February 2010, Plaintiff reported her legs "felt pretty good with only residual numbness" and that her worst pain was on the right side of her lower back.  When Dr. Kane of Dr. Hadden's office examined Plaintiff, he observed negative straight-leg raising, normal gait, and normal reflexes with some limited lumbar extension due to increased pain.  He strongly recommended exercise and tapering off of pain medications.  Tr. 730.

The ALJ also noted Plaintiff's comment that she is physically unable to do the work she is trained to do.  As the ALJ pointed out, that is not the measure of disability; *i.e.*, "there are many unskilled occupations at lower exertional levels."  Tr. 24, 243-44.

Finally, Plaintiff does not challenge the remaining reasons provided by the ALJ as the basis for partially discrediting Plaintiff's testimony; for example, Plaintiff's depression was often stable.  Plaintiff confessed she had been feeling depressed because she was using methamphetamine but had not told her provider, and she rejected Zoloft after only one dose because she did not like how it made her feel.  Tr. 29-30.  Plaintiff also established care with a counselor after a long period of mental-

20 - OPINION AND ORDER

health stability and explained she had been told her "treatment history will become significant" when applying for disability. Tr. 29, 562.  Finally, she displayed a normal gait and did not exhibit any pain behavior in a March 2009 psychological examination.  Tr. 30.

On this record the Court concludes the ALJ provided clear and convincing reasons supported by substantial evidence in the record for finding Plaintiff's testimony was not entirely credible as to the intensity, persistence, and limiting effects of her conditions.[5]  The Court, therefore, concludes the ALJ did not err when he rejected Plaintiff's testimony in part.

## III. The ALJ gave germane reasons for rejecting "other source" opinions.

Plaintiff contends the ALJ erred when he did not give any weight to the opinions of Plaintiff's social worker, Lisa Rosen, M.A., M.S.W., Q.M.H.P., and N.P. Rief.  Both of these sources are considered among the "other sources" listed in the Social Security regulations.  Although they are not "acceptable medical sources," their opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  *See* 20 C.F.R. § 404.1513(d)(1), 416.913(d)(1) (identifying "other sources").  *See also* SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9,

---

[5]  The Commissioner declined to defend the ALJ's adverse credibility finding based on Plaintiff's marijuana usage.

2006)(specifying acceptable and not acceptable medical sources).
The ALJ may reject the opinions of such sources by giving reasons
that are "germane" to that source. *Molina*, 674 F.3d at 1111.
Factors the ALJ should consider when determining the weight to
give an opinion from these "important" sources include the length
of time the source has known the claimant, the number of times
and frequency that the source has seen the claimant, the
consistency of the source's opinion with other evidence in the
record, the relevance of the source's opinion, the quality of the
source's explanation of his opinion, and the source's training
and expertise. SSR 06-03p, at *4. The ALJ must "explain the
weight" given to such sources. SSR 06-03p, at *6.

Plaintiff argues the treatment of Plaintiff by Rosen and
N.P. Rief was not insignificant and their opinions were
consistent with the most recent assessment of Marc Williams, M.D.

Rosen counseled Plaintiff from October to December 6, 2010,
in individual and group sessions. Tr. 565 (10/6/10), Tr. 564,
(10/20/10), Tr. 562-63 (11/8/10), Tr. 750 (11/20/10), Tr. 549-55
(11/22/10), Tr. 751 (11/24/10), Tr. 750 (11/30/10), Tr. 749
(12/6/10). On January 24, 2011, Rosen opined Plaintiff's
symptoms "have not shown significant improvement since I began
working with her in October 2010" and concluded Plaintiff would
not be able to successfully work.

N.P. Rief treated Plaintiff from July 29 to September 28,

22 - OPINION AND ORDER

2010.  Tr. 672 (7/29/10), Tr. 675 (8/11/10), Tr. 676 (9/3/10), Tr. 678 (9/28/10).  When Plaintiff established care with N.P. Rief, Plaintiff reported she was stable on Zoloft but wanted to begin counseling.  At her next appointment Plaintiff did not discuss either her depression or anxiety.  Tr. 675.  In September Rief increased Plaintiff's Zoloft dosage to help Plaintiff with her depressive moods brought on by the divorce from her husband whom she still loved and who was ill.  Tr. 676, 678.  N.P. Rief prepared a Mental Residual Functional Capacity assessment of Plaintiff on January 24, 2011, and opined Plaintiff had moderately severe limitations in four areas, including the ability to complete a normal workday and workweek, to socially interact with the general public and with supervisors, and to set realistic goals.  Tr. 780-81.  N.P. Rief reported she was "actively working on adjusting medication" to manage Plaintiff's depression.  Tr. 781.

The ALJ noted Rosen had only counseled Plaintiff for about three months when Rosen offered her opinion about Plaintiff's moderately severe to severe limitations as to performing work.  Similarly, at the time that N.P. Rief identified Plaintiff's limitations, N.P. Rief had only treated Plaintiff for six months.  The ALJ concluded neither source had a "longitudinal treatment record that could give their findings more significance."  Tr. 31.  In addition, the ALJ, in summarizing N.P. Rief's

opinion, observed Plaintiff reported feeling stable when she first established care with N.P. Rief. The ALJ also pointed out that the record primarily shows "only intermittent complaints of mental impairments and significant response to medications." Tr. 29. In addition, Plaintiff was motivated to establish care with Rosen's office as she was "currently trying to get approved for disability and this does seem to increase her motivation for treatment, as she states she is in the process of looking for a lawyer and has been told that her treatment history will become significant." Tr. 29, 562.

Thus, the Court finds the ALJ gave several germane reasons for not giving any weight to the opinions of Rosen and N.P. Rief, including the length of the treating relationship and incon-sistency with the medical evidence. *See* SSR 06-03p, at *3. *See also Bayliss*, 427 F.3d at 1218.

On this record the Court concludes the ALJ provided germane reasons for rejecting the opinions of Rosen and N.P. Rief.

**IV. The ALJ properly questioned the VE.**

Plaintiff contends the ALJ's hypothetical to the VE was inadequate because it did not include the ALJ's own finding that Plaintiff had moderate limitations in concentration, persistence, and pace. Tr. 22-23. Plaintiff argues the ALJ's statement that Plaintiff is able to perform simple, routine tasks fails to capture her moderate deficiencies in concentration, persistence,

24 - OPINION AND ORDER

or pace.

The ALJ found the following:

> With regard to concentration, persistence or pace,
> the claimant has moderate difficulties.  The
> claimant alleges she has difficulty maintaining
> focus and while she previously read as a hobby,
> she now has difficulty and has to reread things.
> However, she reported being able to follow written
> and verbal instructions and performed well on
> cognitive screening.  To the extent depression and
> anxiety do interfere with concentration,
> persistence or pace, it is at most a moderate
> limitation.

Tr. 22-23 (internal citations omitted).  As a result, the ALJ
limited Plaintiff to unskilled work of routine, repetitive tasks
with simple instructions and detailed tasks that are familiar to
her.  Tr. 23.

Unlike in the cases on which Plaintiff relies (*e.g., Lubin
v. Commissioner of Social Security Administration*, 507 F. App'x
709, 712 (9th Cir. 2013); *Brink v. Commissioner of Social
Security Administration*, 343 F. App'x 211, 212 (9th Cir. 2009);
*Amanti v. Commissioner Social Security Administration*, 6:11-CV-
06378-MA, 2012 WL 5879530, at *7 (D. Or. No. 19, 2012)) to
support her position, the ALJ here specifically relied on the
opinion of a nonexamining psychological consultant, Dave Sanford,
Ph.D.  Dr. Sanford found even though Plaintiff is moderately
limited in her ability to maintain attention and concentration
for extended periods, she

> retains the cognitive ability to perform routine
> and some detailed directions.  She has the ability

> to concentrate and attend to and complete routine
> tasks.  She was able to perform calculations
> accurately and recall 3 of 3 items on delay.  She
> is able to perform routine daily activities.  She
> has a positive past work history with demonstrated
> ability to perform within a schedule, complete a
> normal work week, and work at a productive pace.

Tr. 426, 30.  The ALJ also referenced the findings of William

Trueblood, Ph.D., whose examination showed Plaintiff performed

well on cognitive screening with normal performance on memory

tasks, and her depression caused possible mild impairment in

attention and concentration.  The ALJ determined Dr. Trueblood's

analysis was "consistent with the limitations on complexity of

tasks in the [RFC]."  Tr. 30.

The Court finds the ALJ did not err in his assessment of

Plaintiff's limitations related to concentration, persistence, or

pace because the ALJ's assessment was consistent with Plaintiff's

limitations identified in the medical record.  *See Stubbs-

Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)(RFC of

"simple, routine, repetitive" work is consistent with doctor's

opinion that claimant can carry out "very short simple

instructions," "maintain attention and concentration for extended

periods," and "sustain an ordinary routine without special

supervision.").  *See also Saylor v. Astrue*, No. 3:10-CV-1313-JE,

2012 WL 3597423, at *3-4 (D. Or. Aug. 20, 2012)(order by Judge

Anna Brown adopting Findings and Recommendation).

Thus, on this record the Court concludes the ALJ did not

26 - OPINION AND ORDER

improperly assess Plaintiff's RFC.

**CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 13th day of March, 2014.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

27 - OPINION AND ORDER